# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA**<br>        **Plaintiff** | **CIVIL ACTION** |
| **VERSUS** | **No. 12-2064** |
| **WILLIAM E. TROTTER, II, et al.,**<br>        **Defendants** | **SECTION "E"** |

## ORDER AND REASONS

Before the Court is a motion to transfer venue filed by Defendant, William E. Trotter, II ("Trotter").[1] Trotter argues that this Court should transfer the above-captioned matter to the Western District of Louisiana because that is a more convenient forum for defendants. Plaintiff, National Union Fire Insurance Company of Pittsburgh, Pa. ("NUFIC"), opposes the motion.[2] For the following reasons, the motion is **DENIED**.

### *Background*

The above-captioned matter arises from the sale of a home located at 6 and 8 Grand View Drive ("the home") in Youngsville, Louisiana.[3] According to NUFIC's complaint,[4] Trotter sold Michael M. Seago and Neva Ducote Seago ("the Seagos") the home on July 30, 2010 for $1,300,000. Within days of moving in, the Seagos began noticing "sour smells"

---

[1] R. Doc. 11.

[2] R. Doc. 17.

[3] Youngsville, Louisiana, is located in Lafayette Parish in the Western District of Louisiana.

[4] R. Doc. 1.

1

and having asthma attacks and other respiratory problems. As a result, the Seagos hired a microbiologist who tested for, and confirmed, the presence of mold in the home.

Thereafter, the Seagos filed a lawsuit against Trotter in the Civil District Court for the Parish of Orleans, State of Louisiana, styled *Michael M. Seago and Neva Ducote Seago v. William E. Trotter, II*, Case No. 10-9362 (the "underlying lawsuit"). The Seagos' state court petition alleges that Trotter discovered mold growing in the home sometime after 2006. Trotter retained mold remediation specialists to rid the home of the mold, but despite extensive remediation efforts, these efforts were unsuccessful. According to the Seagos, Trotter listed the home for sale in 2010 because of he was unable to fully remediate the mold problem. Despite having knowledge of the mold problem, Trotter allegedly informed the Seagos that the home was free of mold. The Seagos assert several claims against Trotter in the underlying lawsuit based on Trotter's alleged misrepresentations.

Audubon Insurance Company ("Audubon") issued a homeowner's insurance policy to Trotter for the period of May 26, 2009, to May 26, 2010 ("the policy"). The policy provides homeowner's liability coverage for "personal injury" and "property damage" that is caused by an "occurrence" during the policy period. Under the policy, an "occurrence" is defined as

> [a] loss or an accident, to which this insurance applies, including continuance or repeated exposure to substantially the same general harmful conditions, which occurs during the Policy Period and results in personal injury or property damage; or
>
> [a]n offense, to which this insurance applies, including a series of related offenses, committed during the Policy Period that results in personal injury or property damage.[5]

---

[5] R. Doc. 1 at p. 6.

The policy further defines "property damage" as "physical injury to, destruction of, or loss of use of tangible property and the resulting loss of its use."[6] The policy also contains an exclusion which precludes coverage for intentional acts.[7] Trotter tendered the underlying lawsuit to Audubon for a defense and indemnity. Audubon agreed to provide Trotter with a defense, subject to a reservation of Audubon's right to deny coverage under the policy.

Invoking this Court's diversity jurisdiction,[8] NUFIC, as successor by merger to Audubon, initiated the above-captioned matter pursuant to the Declaratory Judgment Act (28 U.S.C. § 2201) and Rule 57 of the Federal Rules of Civil Procedure. Trotter and the Seagos are named as defendants. NUFIC seeks a declaratory judgment from this Court that no coverage exists under the policy for the Seagos' claims asserted against Trotter in the underlying lawsuit because (1) all of the Seagos' claims arise out of Trotter's alleged misrepresentations, which are not "occurrences" within the meaning of the policy, (2) the damages for which the Seagos seek to recover do not constitute "property damage" within the meaning of the policy, and (3) Trotter's misrepresentations are excluded intentional acts within the meaning of the policy's intentional acts exclusion.

Trotter seeks to transfer the above-captioned matter to the Western District of Louisiana pursuant to 28 U.S.C. § 1404(a) "for the convenience of the parties and witnesses and further in the interest of justice."[9] According to Trotter, "[a]ll the defendants reside

---

[6] R. Doc. 1 at p. 6.

[7] R. Doc. 1 at p. 6.

[8] NUFIC alleges that diversity jurisdiction pursuant to 28 U.S.C. § 1332 is proper because all parties are diverse and the amount in controversy exceeds $75,000, exclusive of costs and interests.

[9] R. Doc. 11 at p. 1.

3

in, the alleged claims in the Complaint all occurred in, and the subject property is located in the Western District of Louisiana."[10] Because NUFIC "is an out of state insurance company whose only connection to the Eastern District [of Louisiana] is the location of its broker," Trotter submits that the interests of justice weigh in favor of transfer. NUFIC responds that venue is proper in this district because a substantial part of the events giving rise to this case occurred in the Eastern District of Louisiana.[11] *See* 28 U.S.C. § 1391(b)(2). Consequently, NUFIC urges the Court to deny Trotter's motion.

### *Law and Analysis*

The U.S. Code permits a district court to transfer any civil action "[f]or the convenience of parties and witnesses, in the interest of justice" to any other district "where it might have been brought." 28 U.S.C. § 1404(a). A party moving to transfer venue must first demonstrate that the plaintiff could have brought the action in the transferee court. *See Hoffman v. Blaski*, 363 U.S. 335, 343-44 (1960); *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*") ("In applying the provisions of § 1404(a), we have suggested that the first determination to be made is whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed."). If venue in the transferee court would be proper, the moving party has the burden of showing "good cause" for transfer by "clearly demonstrat[ing] that a transfer is '[f]or the convenience of the parties and witnesses, in the interest of justice.' " *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) ("*Volkswagen II*") (quoting 28 U.S.C. § 1404(a)). If the transferee court is not clearly more convenient, then the court deciding

---

[10] R. Doc. 11-1 at p. 1.

[11] R. Doc. 17 at p. 3.

4

whether to transfer should respect a plaintiff's choice of venue. *Volkswagen II*, 545 F.3d at 315.

In deciding whether to transfer a case when more than one venue is proper, a court must consider the private interest and public interest factors enunciated in *Gulf Oil Corp v. Gilbert,* 330 U.S. 501, 508 (1947). *See Volkswagen II*, 545 F.3d at 315. The "private interest factors" include: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make a trial easy, expeditious and inexpensive. *Volkswagen* I, 371 F.3d at 203 (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 (1981)). The "public interest factors" include: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; (4) the avoidance of unnecessary problems of conflict of laws or application of foreign law. *Volkswagen* I, 371 F.3d at 203. These eight factors "are appropriate for most transfer cases, [but] they are not necessarily exhaustive or exclusive." *Id.* Nor is any one factor or combination of factors dispositive. *Id.*

Trotter does not dispute that venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2). Rather, Trotter urges the Court to transfer this case to the Lafayette Division of the Western District of Louisiana due to the private interest factors, as most of the documents and witnesses are located within one hundred miles of the U.S. District Courthouse in Lafayette, Louisiana. Likewise, NUFIC does not dispute that venue is also proper in the Western District of Louisiana pursuant to 28 U.S.C. § 1391(b)(1) or (b)(2). Rather, NUFIC contends that Trotter has failed to show good cause why this case should be transferred, as many of the private interest and public interest factors do not weigh in

favor of transfer. NUFIC requests the Court to respect NUFIC's choice of venue.

The Court agrees with NUFIC that Trotter has failed to show good cause why this case should be transferred. As to the private interest factors, this case involves the interpretation of an insurance contract and will be tried to the bench. Much of the proof will be document-based and any witness testimony may be submitted to the Court in deposition form. Furthermore, the Court observes that the Seagos chose to litigate the underlying lawsuit against Trotter in Orleans Parish, the parish in which this Court sits, and have not joined in Trotter's motion to transfer. Consequently, the Seagos availed themselves of this geographic locale and Trotter is already defending himself in a state courthouse just a few miles from where this Court sits. Thus, the first three private interest factors do not weigh in favor of transfer. In addition, the driving distance between the New Orleans and Lafayette U.S. District courthouses is approximately 135 miles. NUFIC's counsel and the Seagos' counsel are located in New Orleans, while Trotter's counsel is located in Lafayette. The Court finds that a trial will be just as easy, expeditious and inexpensive in New Orleans as it will be in Lafayette. In sum, transferring this case from the Eastern District to the Western District would shift the inconvenience from Trotter to NUFIC and the Seagos, and the Court will not shift the burden from one party to the others absent a compelling reason to do so. *See In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*, 2009 WL 4723138, at *2 (E.D. La. Dec. 7, 2009) (Engelhardt, J.).

The public interest factors also do not weigh in favor of transfer. The Eastern District of Louisiana is no more congested than the Western District of Louisiana. In addition, the Court is being called to interpret a Louisiana insurance contract that was executed in this district and that allegedly covers immovable property located in the

6

Louisiana. Likewise, the sales contract transferring such immovable property from Trotter to the Seagos – which is the subject of the underlying lawsuit – was executed in the Eastern District of Louisiana. As this Court sits in Louisiana, the Court is deciding local interests at home, is intimately familiar with the law of the forum, and will be applying Louisiana law. In essence, this Court is well suited to deciding the issues before it.

Given that this is not a case where the plaintiff selected a forum that is completely unrelated either to the parties or the events giving rise to the case, NUFIC's choice of forum should be given deference. *See Travelers Cas. & Surety Co. of Amer v. Univ. Facilities, Inc.*, 2011 WL 197897, at *7 (E.D. La. Jan. 20, 2011) (Vance, J.).

Accordingly, for the reasons assigned,

**IT IS ORDERED** that Trotter's motion to transfer venue is **DENIED.**


**New Orleans, Louisiana, this 28th day of May, 2013.**


_____
**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**